**E-FILED on 3/26/2013**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARCOS C. GUILLEN, | ) | No. C 06-5176 RMW (PR) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION |
| v. | ) | FOR SUMMARY JUDGMENT |
| | ) | |
| | ) | |
| CORRECTIONAL OFFICER ROCHA, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff filed a pro se civil rights action pursuant to 42 U.S.C. § 1983 against prison officials at Salinas Valley State Prison ("SVSP"). Defendants have moved for summary judgment. Although given an opportunity, plaintiff did not originally file an opposition. On July 31, 2012, the court provided plaintiff an opportunity to file a supplemental opposition pursuant to <u>Woods v. Carey</u>, 684 F.3d 934, 939-41 (9th Cir. 2012). On September 17, 2012, plaintiff filed an opposition. On September 24, 2012, defendants filed a supplemental reply. Having carefully considered the papers submitted, the court hereby GRANTS defendants' motion for summary judgment for the reasons set forth below.[1]

_____

[1] Defendants' request for judicial notice is granted.

On June 15, 2005, plaintiff was placed in administrative segregation after being charged with battery on an inmate with a weapon. (Decl. Papan, Ex. D.) On August 2, 2005, plaintiff was found guilty of the lesser charge of mutual combat. (Id., Ex. F.) Plaintiff and the other inmate involved were labeled documented enemies, and were not to be housed in the same facility. (Id.)

On August 23, 2005, plaintiff completed his term in disciplinary administrative segregation, and was recommended for a transfer to Tehachapi State Prison. (Compl. at 3.) Plaintiff was to be retained in administrative segregation until his approved transfer could occur. (Decl. Papan, Ex. F.) The transfer approval was set expire on December 21, 2005 if plaintiff had not yet been transferred. (Id.) In that case, plaintiff would need to return to the Classification Services Representative ("CSR") for re-authorization. (Id.)

On September 20, 2005, plaintiff's administrative appeal ("602") – SVSP 05-03366 – was denied at the first level of review. (Id., Ex. C.) Plaintiff complained that he needed the classification committee to review his special hardship so that he could be sent to Tehachapi State Prison. (Id.) Plaintiff claimed that his hardship was that his diabetic mother was too sick to travel very far. (Id.) The appeal response stated, "Appellant doesn't meet the criteria for a hardship transfer. Budget difficulties have suspended all in-level transfers and have defined all hardship medical transfers as medical conditions affecting the inmate (not family members)." (Id.)

On November 30, 2005, plaintiff filed a federal civil rights suit in this court against prison officials for putting another inmate in his cell who was listed on plaintiff's enemy chrono list.[3] (Supp. Opp. at 1.) The defendants in that suit, Guillen v. Bennett, et al., No. 05-4910 RMW, were Bennett, Sotelo, Ortega, Aldana, Rocha, Galindo, and Guerra. (Req. for Judicial

---

[2] The following facts are undisputed unless otherwise indicated.

[3] Although plaintiff indicated in his complaint that he filed the suit on September 29, 2005, the docket in Guillen v. Bennett, et al., No. 05-4910 RMW, also indicates that plaintiff's complaint was actually filed on November 30, 2005.

1    Notice, Ex. A.)  Defendant Rocha was never served.  (Id.)

2        On November 23, 2005, plaintiff appealed the denial of his 602 – SVSP 05-03366 –

3    requesting a transfer to Tehachapi State Prison, and it was partially granted at the second level.

4    (Compl. Ex. E.)  The response indicated that Administrative Bulletin 91/15 directed: "in-level

5    transfers, except for medical/mental health of necessity of the inmate . . . will not be approved."

6    (Id.)  The response also noted that plaintiff had been endorsed for transfer to CCI-IV 180 as

7    requested, as of August 23, 2005.  (Id.)

8        On December 8, 2005, the Institutional Classification Committee ("ICC") reviewed

9    plaintiff's housing situation.  (Decl. Papan, Ex. H.)  Again, the ICC recommended transfer to

10   CCI-180/HDSP-180, but also recommended retaining plaintiff in administrative segregation

11   pending final review and transfer.  (Id.)  On January 3, 2006, plaintiff was approved for transfer,

12   and was directed to remain in administrative segregation until transfer.  (Id., Ex. I.)

13       On March 15, 2006, plaintiff filed another federal civil rights complaint in this court

14   against prison officials, in Guillen v. Medina, No. 06-1971 RMW.  (Req. Judicial Notice, Ex. C.)

15   Plaintiff named defendants E. Medina, Warden M.S. Evans, Chief Deputy Warden L.E. Scribner,

16   CSR R.S. Feign, Deputy Director Cheryl Pliler, Counselor A. Williams, CCII Appeal

17   Coordinator T. Variz, and Lt. Appeal Coordinator J. Luman.  (Id.)  On December 19, 2007, the

18   case was dismissed for failure to exhaust before any defendants were served.  (Id.)

19       On March 30, 2006, plaintiff wrote a letter to defendants Williams and Nickerson in an

20   attempt to find out why he had not yet been transferred.  (Compl. at 3 and Ex. C.)

21       On April 27, 2006, plaintiff had another ICC review.  (Decl. Papan, Ex. J.)  At that

22   review, the ICC rescinded its endorsement to CCI-180 because of enemy concerns, and, instead,

23   recommended a transfer to KVSP/CCI-IV (180).  (Id.)  Again, the ICC recommended

24   administrative segregation pending final review and transfer because of safety issues.  (Id.)

25   Defendant A. Williams was the recorder at this hearing.  (Id.)

26       On May 15, 2006, plaintiff wrote to the Warden, explaining that he had finished serving

27

28

his time in administrative segregation, but he had not yet been transferred to GP[4] or the TPU[5] program. Plaintiff's letter also explained that he believed his transfer was delayed because he had filed two federal lawsuits – No. 05-4910 RMW and No. 06-1971 RMW. (Compl. Ex. D.)

On May 25, 2006, the ICC rescinded the recommendation for KVSP/CCI-IV (180) because the plaintiff had a court order to be housed at DMH.[6] Plaintiff continued to be housed in administrative segregation because of safety concerns. (Decl. Papan, Ex. K.) At this ICC hearing, the chairperson was defendant M. Moore, and the recorder was defendant A. Williams. (Id.)

On October 5, 2006, staff and plaintiff had safety concerns for plaintiff, but believed that he could program in the TPU program. Plaintiff was referred to SVSP-IV special needs yard ("SNY") endorsement. (Id., Ex. M.) Defendant Nickerson was the staff assistant present, and defendant Moore was the chairperson. (Id.) On November 14, 2006, plaintiff was retained on Facility D TPU program pending DMH placement. (Id., Ex. N.) Defendant Nickerson was a member of the ICC committee at this hearing. (Id.)

On April 13, 2007, the ICC recommended plaintiff for placement in Facility A, pending transfer to DMH, upon availability because plaintiff's documented enemy was no longer housed in Facility A. (Id., Ex. P.)

On June 28, 2007, plaintiff again found himself in administrative segregation pending a rules violation for threatening staff on June 20, 2007. (Id., Ex. Q.)

On September 13, 2007, the ICC denied plaintiff's request for a transfer to Lancaster State Prison, but noted that plaintiff had family ties near that area. (Id., Exs. S, CC.) The ICC observed that plaintiff required the enhanced outpatient program ("EOP") and SNY housing, which were not offered at Lancaster. (Id. at Exs. S, CC.) Based on plaintiff's case factors, the ICC believed that Mule Creek State Prison was appropriate because it was the only institution

---

[4] The court assumes that "GP" stands for "general population."

[5] There is no evidence to define "TPU."

[6] The court assumes that "DMH" stands for the Department of Mental Health.

that currently housed Level IV, EOP, SNY inmates such as plaintiff.  (Id. at Exs. S, CC.)

Plaintiff was transferred to Mule Creek State Prison on May 28, 2008.  (Id., Ex. B.)

# ANALYSIS

I.    Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted."  Anderson, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  Id.  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  Celotex Corp., 477 U.S. at 323.

II.    Plaintiff's claim

Plaintiff claims defendants were aware that he wanted to move closer to Los Angeles to

be near his mother.  (Compl. at 3.)  He argues that defendants retaliated against him by delaying

and denying his transfer requests because he had filed federal lawsuits Nos. 05-4910 RMW and

06-1971 RMW.

"Within the prison context, a viable claim of First Amendment retaliation entails five

basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

exercise of his First Amendment rights, and (5) the action did not reasonably advance a

legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005)

(footnote omitted).

Here, defendants are entitled to summary judgment on the basic premise of lack of

causation.  Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the

plaintiff can show that the defendant proximately caused the deprivation of a federally protected

right.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).  A person deprives another of a

constitutional right within the meaning of § 1983 if he does an affirmative act, participates in

another's affirmative act or omits to perform an act which he is legally required to do, that

causes the deprivation of which the plaintiff complains.  See id. at 633.  The inquiry into

causation must be individualized and focus on the duties and responsibilities of each individual

defendant whose acts or omissions are alleged to have caused a constitutional deprivation.  Id.

To defeat summary judgment, sweeping conclusory allegations will not suffice; the plaintiff

must instead "set forth specific facts as to each individual defendant's" actions which violated

his or her rights.  Id. at 634.

In this case, plaintiff has not provided evidence of a causal link between each individual

defendants' allegedly wrongful conduct and a violation of plaintiff's right to be free from

retaliation.  See, e.g., id. (concluding that summary judgment was proper because the prisoners

failed to allege facts that demonstrated that the defendant was the actual and proximate cause of

any constitutional violation).  Specifically, regarding defendant Rocha, there is absolutely no

evidence that he was involved in any decision to transfer plaintiff or retain him at SVSP in

administrative segregation.  Cf. Keenan, 91 F.3d at 1279.  Regarding defendant Moore, at most,

Moore served as a chairperson several times in the ICC hearings. (Decl. Papan, Exs. K, M.) However, Moore was only one member of a three-person committee – he was not the sole arbiter. Regarding defendant Nickerson, at most, Nickerson was either a staff assistant at the ICC hearings (Decl. Papan, Exs. M, W), or Nickerson was one member of the ICC (Decl. Papan, Ex. O). Finally, regarding defendant A. Williams, A. Williams was a recorder at several ICC hearings. (Decl. Papan, Exs. G, J, K.) In addition, the evidence is undisputed that all ICC recommendations were required to be approved by a CSR before it becoming final. See Cal. Code Regs. tit. 15, § 3375.1. Notably, there is no evidence that any defendant was a CSR with the power to unilaterally approve or disapprove ICC recommendations. Thus, there is no evidence that defendants proximately caused the denials or delays of transfer. See Leer, 844 F.2d at 633-34.

Even assuming that there is a proper causal link between plaintiff's retaliation claim and defendants' actions, and that a delay or denial of a request for transfer can be considered an adverse action, cf. Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995), there is absolutely no evidence that defendants were aware of plaintiff's federal lawsuits at the times plaintiff's requests for transfer were denied. Indeed, plaintiff's first level of review response to his 602 requesting a transfer was that "Budget difficulties have suspended all in-level transfers and have defined all hardship medical transfers as medical conditions affecting the inmate (not family members)." (Decl. Papan, Ex. C.) This response was filed prior to either of plaintiff's lawsuits, which plaintiff baldly claims were the impetus for defendants' retaliation. Plaintiff asserts that he kept a log and recorded on September 5, 2006 that he told non-defendants Aldana and Ortega, as well as defendant Rocha that he filed a civil rights complaint against them. (Supp. Opp. at 1.) By September 5, 2006, plaintiff's requests for a transfer had already been denied several times. Moreover, service was never ordered upon defendant Rocha. (Req. for Judicial Notice, Ex. A.) Thus, the lawsuits could not have been the proximate cause for this "adverse action," and the court finds that there is an absence of evidence that the lawsuits were a substantial or motivating factor of the denials of plaintiff's requests for transfer. See Hines v. Gomez, 108 F.3d 265,

267-68 (9th Cir. 1997).[7]

Finally, plaintiff does not dispute that denials of his requests for transfer advanced a legitimate correctional purpose.  See Schroeder, 55 F.3d at 461 ("Legitimate goals of a correctional institution include the preservation of internal order and discipline and the maintenance of institutional security.").  Here, the undisputed evidence shows that the ICC and CSR decisions were made after consideration of plaintiff's case factors, population management needs, the institution's mission, and the safety of all inmates and staff.  (Decl. Papan, Ex. CC.)

Viewing the evidence and the reasonable inferences therefrom in the light most favorable to plaintiff, no reasonable jury could find in his favor on the retaliation claim.  Defendants are entitled to judgment as a matter of law on this claim.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED.  The clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED: _____

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

---

[7] In addition, plaintiff's current lawsuit was filed on August 24, 2006, which was before plaintiff noted in his log that he informed Rocha of having filed a lawsuit against him.

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

MARCOS C. GUILLEN,

        Plaintiff,

  v.

ROCHA et al,

        Defendant.

_____/

Case Number: CV06-05176 RMW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 25, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Marcos C Guillen K04517
California State Prison-Sacramento
FA3-120
Post Office Box 290066
Represa, CA 95671

Dated: September 25, 2012

                    Richard W. Wieking, Clerk
                    By: Jackie Lynn Garcia, Deputy Clerk